# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ASHLEY P.,[1]             :   Case No. 2:24-cv-00696
                          :
      Plaintiff,       :   Magistrate Judge Caroline H. Gentry
                          :   (by full consent of the parties)
vs.                       :
                          :
COMMISSIONER OF THE SOCIAL :
SECURITY ADMINISTRATION,  :
                          :
      Defendant.       :

---

## DECISION AND ORDER

---

Plaintiff filed an application for Supplemental Security Income (SSI) on September 29, 2020. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.  BACKGROUND

Plaintiff asserts that she has been under a disability since July 30, 2019.[2] She was thirty-three years old on the SSI application date. Accordingly, Plaintiff was considered a "younger person" under the applicable regulation. 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7-2) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 36-55), Plaintiff's Statement of Errors ("SE," Doc. No. 8), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.  STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on September 29, 2020, the date Plaintiff filed the application. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [the plaintiff] filed his protective application.").

ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the applicable regulation. 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since September 29, 2020, the SSI application date. |
| Step 2: | She has the severe impairments of inflammatory polyarthropathy/ rheumatoid arthritis, obesity, asthma, bilateral ulnar neuropathy, tobacco dependence, anxiety disorder, depressive disorder, and posttraumatic stress disorder (PTSD). |
| | She has the following nonsevere impairments: hiatal hernia, rectal polyp, hidradenitis suppurativa, gastroesophageal reflux disease (GERD), an abscess, and meniscus tear of the knee. |

|          | Fibromyalgia, back pain, hip pain, and learning disorder are not medically determinable impairments. |
|----------|------|
| Step 3:  | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4:  | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b) subject to the following limitations: "[S]he can frequently operate hand and foot controls bilaterally. She can frequently reach and handle items bilaterally. She can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can frequently balance and stoop. She can occasionally kneel, crouch, and crawl. She can occasionally work at unprotected heights and around moving mechanical parts. She can frequently work in humidity and wetness, in atmospheric conditions, in extreme cold, in extreme heat, and in vibration. She can frequently operate a motor vehicle. After an initial training period, she can interact occasionally with supervisors and coworkers but can never interact with the public, except incidentally. Her work should not require collaborative teamwork as an essential component of the job. In addition, she needs a low-stress work environment defined as no fast-paced production requirements and no greater than occasional changes in a routine work setting." |
|          | She is able to perform her past relevant work as a housekeeper, as the job was actually and generally performed. |
| Step 5:  | Even without considering past relevant work, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Decision, Doc. No. 7-2 at PageID 42-51.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 51.)

5

## B. The ALJ's Evaluation Of Plaintiff's Mental Impairments

The ALJ found that Plaintiff's anxiety disorder, depressive disorder, and posttraumatic stress disorder are severe. (Decision, Doc. No. 7-2 at PageID 42.) At Step Three, the ALJ explained that he considered the "paragraph B" criteria and concluded that Plaintiff's mental impairments cause moderate limitation in the areas of interacting with others and adapting or managing oneself. (*Id.* at PageID 44-45.) The ALJ found mild impairment in Plaintiff's ability to understand, remember, or apply information and to concentrate, persist, or maintain pace. (*Id.*)

Regarding the ALJ's finding in the area of understanding, remembering, or applying information, the ALJ supported his conclusion by citing Plaintiff's subjective complaints in a function report that she needed to set alarms for things such as taking medication, was able to follow written instructions "[eighty] percent of the time on a good day," and had difficulty remembering more than three things at a time. (Decision, Doc. No. 7-2 at PageID 44.) The ALJ compared these complaints to the medical records and cited a November 2020 progress note that documented no memory loss. (*Id.*) He also cited the May 2021 report of consultative psychologist Ryan Wagner, Psy.D., who stated that "[Plaintiff's] performance on a brief word reasoning task was not suggestive of difficulty understanding instructions" and that Plaintiff "did not have difficulty understanding and responding to questions but reported problems learning work tasks." (*Id.*) The ALJ concluded that the weight of the evidence supported a finding of only mild impairment in this area. (*Id.*)

6

The ALJ also weighed Plaintiff's subjective complaints against the objective evidence to find mild impairment in the area of concentrating, persisting, or maintaining pace. He acknowledged Plaintiff's complaints in a disability report that she could pay attention for approximately one hour at a time and that she did not "finish what she starts." (Decision, Doc. No. 7-2 at PageID 44.) The ALJ also acknowledged Plaintiff's complaint during the consultative psychological evaluation that she had a "history of problems with concentration in work settings, which negatively affected completion of work duties." (*Id.* at PageID 44-45.) The ALJ compared this to consultative psychologist Dr. Wagner's report that Plaintiff "adequately completed tasks that assessed attention during her consultative exam," exhibited adequate persistence and pace, and "was able to following the conversation without asking for regular repetition of questions." (*Id.*)

In the RFC analysis, the ALJ summarized the report from consultative psychologist Dr. Wagner. (Decision, Doc. No. 7-2 at PageID 48.) The ALJ noted that Plaintiff "presented as depressed with a flattened affect" but otherwise maintained consistent eye contact, was cooperative, and put forth adequate effort to complete the evaluation process. (*Id.*) The ALJ cited Dr. Wagner's observations that Plaintiff did not display any loose associations, exhibited an adequate level of understanding, recalled personal historic information without significant difficulty, was able to accurately perform simple math calculations, and exhibited normal intellectual functioning. (*Id.*) The ALJ also summarized the outpatient mental health treatment records:

> Treatment records from Southeast Health Care also documented that
> [Plaintiff] was prescribed medications, such as Trazodone and Clonidine,
> for generalized anxiety disorder and major depressive disorder (Exhibit

7

> C1F, p. 16). In addition, the records noted that she had therapy to manage symptoms of PTSD, anxiety, and depression (Exhibit C11F, p. 27). Therapy notes indicated that she was routinely cooperative and had clear and coherent stream of thought with adequate insight, fair judgment, but anxious mood (Exhibit C11F, pp. 4, 8, 14, and 16).

(*Id.*)

The ALJ concluded that Plaintiff's alleged symptoms were not "fully supported by the objective findings." (Decision, Doc. No. 7-2 at PageID 48.) The ALJ reasoned:

> The undersigned notes that while [Plaintiff] received mental health services, including counseling and medication management, she has never been hospitalized for mental health problems. In addition, [Plaintiff] did not display any loose associations during her consultative examination, and she did not display excessive complaints of fatigability or pain (Exhibit C5F, p. 4). In addition, she recalled personal historic information without significant difficulty and was found to have normal intellectual functioning (Exhibit C5F, p. 4). However, [Plaintiff] reported a history of problems with concentration in a work setting, as well as problems with limited social interaction, problems managing pressure in activities, and problems managing pressure in prior work settings (Exhibit C5F, p. 6).

(*Id.*)

The ALJ reiterated that he reviewed Plaintiff's testimony and written statements and compared them to "the clinical facts, medical findings and opinions of the treating, examining and non-examining physicians." (Decision, Doc. No. 7-2 at PageID 49.) The ALJ explained that he therefore limited Plaintiff to occasional interactions with supervisors and coworkers (with no collaborative teamwork as an essential component of the job), no more than incidental public interactions, a low-stress work environment with no fast-paced production requirements, and no greater than occasional changes in a routine work setting to account for this evidence. (*Id.* at PageID 48.)

### C.  Consultative Psychologist Ryan Wagner, Psy.D.

Ryan Wagner, Psy.D. performed a consultative psychological evaluation in May 2021. (AR, Doc. No. 7-9 at PageID 476-81.) Dr. Wagner provided a narrative report and documented Plaintiff's reported subjective complaints and the mental status examination findings that he observed during the evaluation. (*Id.* at PageID 476-78.) Dr. Wagner stated that the examination findings supported diagnoses of major depressive disorder and PTSD. (*Id.* at PageID 479.) When asked to assess Plaintiff's abilities and limitations in the area of understanding, carrying out, and remembering one-step and complex instructions, Dr. Wagner stated that Plaintiff's performance on a brief word reasoning tasks "was not suggestive of difficulty remembering instructions." (*Id.* at PageID 480.) He reported that Plaintiff "did not have difficulty understanding and responding to questions posed during the examination." (*Id.*) But he acknowledged that Plaintiff "reported problems learning work tasks including difficulty learning new information and following instructions." (*Id.*)

In the area of sustaining concentration and persisting in work-related activities at a reasonable pace, Dr. Wagner acknowledged that Plaintiff reported "a history of problems with concentration in work settings which negatively affected completion of work duties." (AR, Doc. No. 7-9 at PageID 480.) However, he reported that Plaintiff followed the conversation, did not ask for regular repetition of questions, adequately completed tasks which assessed attention, and exhibited an adequate level of energy, persistence, and pace during the evaluation. (AR, Doc. No. 7-9 at PageID 480.)

Regarding social interactions, Dr. Wagner noted that Plaintiff reported "problems with conflicts in work settings," as well as "problems with limited social interaction and social withdrawal." (AR, Doc. No. 7-9 at PageID 480.) Dr. Wagner stated that Plaintiff presented as highly anxious during the evaluation, "which may impact social engagement in work settings including social avoidance." (*Id.*) On the other hand, Dr. Wagner reported that Plaintiff "did not present with intellectual limitations which would impact her ability to understand and respond to supervisory feedback." (*Id.*)

In the final area of dealing with normal pressures in a competitive work setting, Dr. Wagner cited Plaintiff's reports of "problems managing pressure in activities such as grocery shopping which contributed to experiences of increased anxiety," as well as "problems managing pressure in prior work settings which contributed to frustration tolerance and conflicts." (AR, Doc. No. 7-9 at PageID 480-81.) He commented that Plaintiff's presentation "was indicative of intellectual limitations which may negatively impact her ability to manage normal work pressures." (*Id.*) Dr. Wagner also stated that Plaintiff "presented as highly anxious when discussing current pressures which may impact her mood stability in a competitive work setting." (*Id.*)

The ALJ concluded that consultative psychologist Dr. Wagner's opinion was "persuasive." (Decision, Doc. No. 7-2 at PageID 49.) The ALJ reasoned that Dr. Wagner's opinion was "consistent with his examination as well as with [Plaintiff's] generally good mental status examinations in the record (Exhibit C11F, pp. 4, 8, 14, and 16)." (*Id.*) However, the ALJ explained that he did not adopt verbatim Dr. Wagner's

10

functional discussion because "it is difficulty [sic] to tell if the consultative examiner gave opinions or merely stated observations." (*Id.*)

### D. State Agency Psychological Consultants

State agency psychological consultant Aracelis Rivera, Psy.D. completed a Disability Determination Explanation form in May 2021. (AR, Doc. No. 7-3 at PageID 114, 117-18.) Dr. Rivera found moderate impairment in three of the "B Criteria" areas of functioning: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at PageID 114.) He found mild impairment in the area of understanding, remembering, or applying information. (*Id.*) In the mental RFC section of the form, Dr. Rivera cited diagnoses of depression and PTSD and opined that Plaintiff was capable of performing simple, one- to two-step tasks "which are routine in nature and not fast paced." (*Id.* at PageID 117.) He noted that Plaintiff reported problems with limited social interaction and social withdrawal, and that she presented as cooperative but anxious at the consultative psychological evaluation. Dr. Rivera opined that Plaintiff was limited to superficial interactions with coworkers, supervisors, and the general public. (*Id.* at PageID 118.) Dr. Rivera further opined that Plaintiff could adapt to routine changes. (*Id.*)

Deryck Richardson, Ph.D. reviewed the updated record at the reconsideration level in November 2021. (AR, Doc. No. 7-3 at PageID 124, 127-28.) Dr. Richardson affirmed Dr. Rivera's findings regarding the "B Criteria" areas of functioning. (*Id.* at PageID 124.) However, he opined that Plaintiff was limited to "simple and occasionally complex, routine [and] repetitive tasks" that involve no fast production rate pace, no strict

production quotas, occasional interaction with coworkers but with no tandem or shared tasks, occasional interaction with supervisors but with no over-the-shoulder supervision, and occasional interaction with the public but not in a customer-service capacity. (*Id.* at PageID 127.)

The ALJ concluded that the State agency psychological consultants' findings were "not persuasive." He reasoned that the medical evidence of record, specifically the report of consultative psychologist Dr. Wanger, did not support a limitation to simple work. (Decision, Doc. No. 7-2 at PageID 49.) The ALJ explained that Dr. Wagner found that Plaintiff's intellectual functioning "fell within normal limits" and that her "performance on brief word reasoning tasks and brief short-term memory tasks was not suggestive of difficulty understanding or remembering instructions." (*Id.*) The ALJ further reasoned that Plaintiff "did not have difficulty understanding and responding to questions posed during [the consultative] examination." (*Id.*)

### E. The ALJ's Evaluation Of Fibromyalgia And Chronic Back Pain

At Step Two, the ALJ concluded that fibromyalgia and back pain are not medically determinable impairments "due to a lack of objective evidence." (Decision, Doc. No. 7-2 at PageID 43.) The ALJ cited the regulatory requirement that a medically determinable impairment "may not be established solely on the basis of symptoms alone, or on the claimant's allegations regarding symptomatology."[3] (*Id.*) The ALJ also

---

[3] The ALJ cited 20 C.F.R. § 416.908, which was removed and reserved effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at *5874 (Jan. 18, 2017). However, this is a harmless error because 20 C.F.R. § 416.921 supports the ALJ's statement: "[A]

explained that the record did not contain "the specific requirements for a finding of a medically determinable impairment under SSR 12-2p for fibromyalgia." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts two assignments of error. (SE, Doc. No. 8 at PageID 804.) First, Plaintiff contends that the ALJ erred because the RFC is not supported by substantial evidence. (SE, Doc. No. 8 at PageID 804.) Plaintiff argues that the ALJ "erroneously discounted the prior ALJ's determination, the opinions of the state psychological consultants[,] and the opinions of the consultative examiners and instead relied upon his own lay opinion to determine [her] mental limitations." (*Id.* at PageID 804.) Plaintiff also claims that the ALJ's RFC does not adequately account for her limitations in concentration, persistence, or pace. (*Id.* at PageID 809.) Second, Plaintiff asserts that the ALJ erred at Step Two because he found that fibromyalgia and chronic back pain were not medically-determinable impairments. (*Id.* at PageID 811.) For the reasons discussed below, Plaintiff's assertions are not well-taken.

### A. The ALJ Did Not Reversibly Err In His Analysis Of Plaintiff's Mental Impairments.

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 416.946(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and [Plaintiff]'s testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most

---

physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921 (effective March 27, 2017).

13

she can do in a work setting despite her physical and mental limitations. 20 C.F.R.

§ 416.945(a)(1). When formulating the RFC, the ALJ must consider the claimant's

"ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R.

§ 416.945(a)(4). The ALJ must base the RFC on all relevant evidence in the record,

including the claimant's descriptions of her limitations and symptoms, objective medical

evidence, medical opinions, other medical evidence, evidence from non-medical sources,

and prior administrative medical findings. *See* 20 C.F.R. § 416.945(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period

when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022

U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022

U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge

Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth

Circuit has emphasized that the chief limitation to that deference 'is the requirement that

all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS

140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).

Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's

history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the

ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)

(citing 20 C.F.R. § 416.946(c)). An ALJ is required to consider medical opinion evidence

when determining the RFC, but he is not required to adopt them or adopt any such

findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he

determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

1.  **The ALJ Did Not Improperly Substitute His Own Opinion For The Medical Opinions In The Record**

Notably, Plaintiff does not claim that the ALJ failed to comply with applicable regulations in his analysis of the medical opinion evidence. (SE, Doc. No. 8.) Instead, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ discounted all of the medical opinions in the record and substituted his own lay opinion to determine Plaintiff's mental limitations. (SE, Doc. No. 8 at PageID 805-08.) This contention is not well-taken.

Plaintiff cites to several cases to argue that the ALJ's decision should be remanded because "the ALJ must not 'succumb to the temptation to play doctor and make their own independent medical findings.'" (SE, Doc. No. 8 at PageID 809 (citing *Henderson v. Comm'r of Social Sec.*, No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, at *1 (N.D. Ohio Mar. 1, 2010); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009); *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013).) Plaintiff argues that the ALJ "did not base the mental limitations in [his] RVC on any medical opinion, instead . . . relying on his own lay opinion to formulate [his] RFC." *Id*. This argument is not well-taken.

The ALJ in *Simpson* rejected a treating physician's medical opinion on the grounds that it was "so extreme as to be implausible," as it was "inconceivable that this claimant who has had pain due to pelvic adhesions with otherwise normal examinations would be completely unable to move or do anything at all." 344 F. App'x at 194. The Sixth Circuit found that "the ALJ's statements as to the implausibility of [the treating

16

physician's] findings constitute a medical judgment the ALJ was not qualified to make." *Id.* The Sixth Circuit further found that the ALJ improperly "substituted Dr. Bonyo's medical opinion with his own in determining the degree of pain resulting from the condition from which [the plaintiff] suffers, and did not merely rely upon her testimony as to her daily activities or another doctor's testimony as to her condition." *Id.* The ALJ in this case did none of these things. Instead, the ALJ concluded that the consultants' limitation for simple work was inconsistent with consultative psychologist Dr. Wagner's observations that Plaintiff's intellectual functioning was within normal limits, her "performance on brief word reasoning tasks and brief short-term memory tasks was not suggestive of difficulty understanding or remembering instructions," and she "did not have difficulty understanding and responding to questions posed during her examination." (Decision, Doc. No. 7-2 at PageID 49 (citing AR, Doc. No. 7-9 at PageID 480).) This case is factually distinguishable from *Simpson*.

*Allen* is also distinguishable. In that case, the ALJ rejected the only medical opinion in the record. 2013 WL 5676254, at *15. Here, by contrast, the ALJ reviewed and evaluated several medical opinions about Plaintiff's work-related limitations, including assessments from the state agency psychological consultants and the consultative psychologist, and he used these opinions to formulate the RFC. (Decision, Doc. No. 7-2 at PageID 49.) Although Plaintiff claims that the ALJ rejected all of these opinions, the Court disagrees. The ALJ did find the state agency psychological consultants' assessments "not persuasive ***in that the medical evidence of records, especially the consultative examination of Dr. Wagner, does not support a limitation to***

*simple work*."[4] (Decision, Doc. No. 7-2 at PageID 49 (emphasis added).) But the ALJ adopted many of the consultants' opinions when he limited Plaintiff to occasional interactions with supervisors and coworkers, no collaborative teamwork as an essential component of job duties, no public interaction, and a low-stress work environment with no fast-paced production requirements and no more than occasional changes in a routine work setting.[5] (*Compare* AR, Doc. No. 7-3 at PageID 117-18, 127, *with* Decision, Doc. No. 7-2 at PageID 45.) Therefore, *Allen* is also distinguishable.

*Henderson* is instructive, but not in a way that favors Plaintiff. In that opinion, a federal district judge rejected the recommendation of a magistrate judge to remand a claim to the Commissioner, after explaining that the magistrate judge incorrectly described the ALJ's authority to assess the RFC. The district judge emphasized that the ALJ is charged with evaluating the evidence to determine a claimant's RFC, and noted that "[the] Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson*, 2010 WL 750222, at *2 (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 2009 WL

---

[4] Plaintiff asserts that "without explanation," the ALJ "did not include any of the limitations . . . to simple, routine work" that the consultants and consultative examiner suggested. (SE, Doc. No. 8 at PageID 808.) This is not correct. The ALJ explained that he did not adopt the consultants' limitation to simple tasks because the findings documented by consultative psychologist Dr. Wagner—which included normal intellectual functioning, Plaintiff's performance on brief word reasoning tasks and short-term memory tasks, and no difficulty understanding or remembering instructions—did not support such a limitation. (Decision, Doc. No. 7-2 at PageID 49.) The Court notes that the ALJ did limit Plaintiff to routine tasks in the limitation for a low-stress work environment, defined as "no fast-paced production requirements and no greater than occasional changes in a *routine* work setting." (*Id.* at PageID 45 (emphasis added).)

[5] The ALJ's RFC limitation to no interaction with the public is even more restrictive than the consultants' assessments. (*Compare* AR, Doc. No. 7-3 at PageID 118, 127, *with* Decision, Doc. No. 7-2 at PageID 45.)

18

2514058, at *7 (6th Cir. Aug. 18, 2009)). Thus, *Henderson* provides more support for Defendant's position than for Plaintiff's position.

Here, the ALJ explained his decisions regarding the persuasiveness that he assigned to the opinions, discounting the consultants' limitation to simple work, and declining to adopt verbatim the comments of consultative psychologist Dr. Wagner. Those decisions are supported by substantial evidence. Similarly, the ALJ's conclusion that the mental limitations in the RFC account for the balance of the evidence is also supported by substantial evidence. The ALJ did not "improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010). The ALJ's conclusions are supported by substantial evidence, and the applicable legal framework did not require him to do more.

### 2. The ALJ's RFC Adequately Accounts For Plaintiff's Limitations In Concentration, Persistence, And Pace

Next, Plaintiff argues that the ALJ "failed to properly account for [her] limitations in concentration, persistence, or pace." (SE, Doc. No. 8 at PageID 809.) Plaintiff asserts that while the ALJ included limitations to a low-stress work environment that involves no fast-paced production requirements and no greater than occasional changes in a routine work setting, the ALJ "failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." (*Id.* at PageID 810.) This assertion, too, is not well-taken.

As noted, the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Instead, this Court is confined to determining whether the ALJ's findings are supported by substantial evidence. The Court concludes that the ALJ's findings regarding concentration, persistence, and pace are, in fact, supported by substantial evidence.[6]

The ALJ acknowledged many of Plaintiff's subjective complaints, which included depression, PTSD symptoms, anxiety, memory and concentration issues, variable attention, difficulty completing tasks, difficulty getting along with some family members and with "loud, argumentative people," social withdrawal, low frustration tolerance, problems learning work tasks, and difficulty managing pressure in activities. (Decision, Doc. No. 7-2 at PageID 44-48.) The ALJ summarized medical records that documented Plaintiff's treatment for her mental impairments. (*Id.*) He acknowledged many of the abnormal findings in the treatment notes, including anxious moods. (*Id.*) The ALJ also acknowledged abnormal findings that Dr. Wagner documented during the consultative psychological evaluation, which included a highly anxious presentation, a depressed mood, and flattened affect. (*Id.*) The ALJ compared these findings to other examinations

---

[6] The ALJ discussed much of the evidence at Step Three and then referred to his Step Three discussion in the RFC analysis. (*See* Decision, Doc. No. 7-2 at PageID 44-45, 48-49.) Sixth Circuit precedent establishes that this Court may consider the evaluation of the evidence at other steps of the decision to determine how to "credit the evidence at issue in this appeal." *See, e.g., Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x. 426, 435 (6th Cir. 2014); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). Accordingly, this Court will consider the ALJ's evaluation of Plaintiff's mental impairments earlier in Step Three and in the RFC analysis when evaluating Plaintiff's assignment of error.

throughout the record that showed no memory loss, cooperative behavior, clear and coherent thought processes, adequate insight, and fair judgment. (*Id.*) The ALJ also cited normal findings that consultative psychologist Dr. Wagner documented, such as cooperative behavior, no loose associations, consistent eye contact, no difficulty understanding instructions on a brief word reasoning tasks, no difficulty understanding or responding to questions, an ability to follow the conversation without asking for regular repetition of questions, adequate persistence and pace, no difficulty with accurately completing simple math calculations, and normal intellectual functioning. (*Id.*)

The ALJ concluded that the balance of the objective evidence did not support Plaintiff's allegations of disabling symptoms. (Decision, Doc. No. 7-2 at PageID 46, 48.) The ALJ noted that although Plaintiff received mental health treatment in the form of counseling and medication management, she had not been hospitalized for any mental health issues. (*Id.* at PageID 48.) The ALJ nevertheless accounted for the evidence in the record by limiting Plaintiff to occasional interactions with supervisors and coworkers (and with no collaborative teamwork as an essential component of the job), no more than incidental public interaction, and a low-stress work environment, which the ALJ defined as no fast-paced production requirements and no greater than occasional changes in a routine work setting. (*Id.* at PageID 45, 48.) Because these conclusions are supported by substantial evidence, the Court concludes that the ALJ did not err by failing to include additional mental limitations in the RFC.

The medical opinion evidence also supports the ALJ's conclusions. The ALJ evaluated the state agency psychological consultants' findings pursuant to 20 C.F.R.

§ 416.920c. (Decision, Doc. No. 7-2 at PageID 49.) The ALJ explained that the consultants' proposed limitation to simple work was not persuasive, because it was not supported by the medical evidence of record. (*Id.*) By way of example, the ALJ cited consultative psychologist Dr. Wagner's findings:

> [Dr. Wagner] found that [Plaintiff's] intellectual functioning fell within normal limits. He also found that her performance on brief word reasoning tasks and brief short-term memory tasks was not suggestive of difficulty understanding or remembering instructions. She also did not have difficulty understanding and responding to questions posed during her examination (Exhibit C5F, p. 5).

> (*Id.*)

The ALJ also evaluated the opinions of consultative psychologist Dr. Wagner pursuant to 20 C.F.R. § 416.920c. (Decision, Doc. No. 7-2 at PageID 49.) The ALJ concluded that Dr. Wagner's opinions were persuasive because they were consistent with his examination findings, as well as with the "generally good mental status examinations in the record (Exhibit C11F, pp. 4, 8, 14, and 16.)." (*Id.*) The ALJ noted, however, that he did not adopt verbatim Dr. Wagner's statements because "it is difficulty [sic] to tell if the consultative examiner gave opinions or merely stated observations." (*Id.*)

The Court notes that Plaintiff has not pointed to, and the record does not contain, a medical opinion that supports the additional mental limitations that Plaintiff suggests. Taken together, the evidence cited by the ALJ constitutes substantial evidence — that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154) — that supports the ALJ's RFC. Because the

ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion.

Relying on a case from the Eastern District of Michigan,[7] Plaintiff asserts: "[T]he ALJ's RFC fails to convey er [sic] limitations accurately and fully in concentration, persistence, and pace to the vocational expert." (SE, Doc. No. 8 at PageID 810 (citing *Keyser v. Comm'r of Soc. Sec.*, No. 03-60078, 2004 U.S. Dist. LEXIS 28840, at *6 (E.D. Mich. Sept. 2, 2004).) *Keyser* is factually distinguishable. In that case, the court found that the ALJ failed to account for the plaintiff's moderate difficulties in concentration in the hypothetical question posed to the vocational expert at the hearing. 2004 U.S. Dist. LEXIS 28840, at *6-8. Here, by contrast, the ALJ found that Plaintiff experiences only mild impairment in the "paragraph B" area of concentrating, persisting, or maintaining pace—and the ALJ did not misconstrue that limitation in a question to a vocational expert. (Decision, Doc. No. 7-2 at PageID 44-45.) Instead, the ALJ supported this conclusion by comparing Plaintiff's subjective complaints to objective evidence, and the Court finds that his conclusion is supported by substantial evidence.

Although Plaintiff also cites a Sixth Circuit case, it appears to support the general principle that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional

---

[7] Plaintiff's citation states: "See *Keyser*, No. 03—60078." (SE, Doc. No. 8 at PageID 810.) The Court will presume that Plaintiff intended to cite to *Keyser v. Comm'r of Soc. Sec.*, No. 03-60078, 2004 U.S. Dist. LEXIS 28840, at *6 (E.D. Mich. Sept. 2, 2004).

capacity.'"[8] (SE, Doc. No. 8 at PageID 810 (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).) That is precisely what the ALJ did in this case. Because the ALJ applied the proper legal standards his decision is supported by substantial evidence, the ALJ did not err in his evaluation of Plaintiff's mental impairments.

### B. The ALJ Did Not Reversibly Err In His Analysis Of Fibromyalgia And Chronic Back Pain.

An ALJ evaluates the "medical severity" of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 416.920(a)(4)(ii). Before determining whether an impairment is "severe," the ALJ must first determine whether the impairment is medically determinable. A "medically determinable impairment" is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Additionally, medically determinable impairments "must be established by objective medical evidence from an acceptable medical source." *Id.*; *see also* Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3-4 (revised and republished Oct. 25, 2017).[9] An ALJ cannot use a claimant's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment. *Id.* Significantly, "a claimant bears the burden of demonstrating that she suffers from a medically determinable impairment." *Kestel v.*

---

[8] Plaintiff generally cites to page 633 of the *Webb* decision. (SE, Doc. No. 8 at PageID 810 (citing *Webb*, 368 F.3d at 633).) Nothing on that page references any mental impairments or an ALJ's duty to account for limitations in concentration, persistence, or pace. *Webb*, 368 F.3d at 633.

[9] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

*Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

SSR 12-2p provides additional guidance about the evidence that is required to establish a medically determinable impairment of fibromyalgia. SSR 12-2p; Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2-3 (S.S.A. July 25, 2012). "[A] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence [to establish fibromyalgia]," but the ALJ "cannot rely upon the physician's diagnosis alone." *Id.* at *2. The ALJ will find a medically determinable impairment of fibromyalgia if the physician diagnosed fibromyalgia, the diagnosis "is not inconsistent with the other evidence in the person's case record," and the physician provides the evidence described under one of the following two sets of criteria for diagnosing fibromyalgia:

A. The 1990 ACR Criteria for the Classification of Fibromyalgia. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following:

1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.

25

    a. The 18 tender point sites are located on each side of the body at the:

- Occiput (base of the skull);
- Low cervical spine (back and side of the neck);
- Trapezius muscle (shoulder);
- Supraspinatus muscle (near the shoulder blade);
- Second rib (top of the rib cage near the sternum or breast bone);
- Lateral epicondyle (outer aspect of the elbow);
- Gluteal (top of the buttock);
- Greater trochanter (below the hip); and
- Inner aspect of the knee.

    b. In testing the tender-point sites, the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.

3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

B. The 2010 ACR Preliminary Diagnostic Criteria. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:

1. A history of widespread pain (see section II.A.1.);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

26

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

*Id.* at *2-3.

Significantly, an ALJ is not required to consider impairments that are not medically determinable when assessing a claimant's RFC. *See Durbin v. Comm'r of Soc. Sec.*, No. 2:17-cv-896, 2020 U.S. Dist. LEXIS 92160, at *43 (S.D. Ohio May 27, 2020) (Morrison, D.J.); *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 U.S. Dist. LEXIS 90001, at *33 (E.D. Mich. May 8, 2018).

Turning to the facts of this case, Plaintiff challenges the ALJ's Step Two finding that fibromyalgia and chronic back pain are not medically determinable impairments. (SE, Doc. No. 8 at PageID 811-13.) This contention is not well-taken.

The ALJ observed that the record contained a "lack of objective evidence" to establish Plaintiff's complaints of fibromyalgia and back pain as medically determinable impairments. (Decision, Doc. No. 7-2 at PageID 43.) The ALJ also explained that the record did not contain the requirements to establish fibromyalgia as a medically determinable impairment pursuant to SSR 12-2p. (*Id.* (citing 2012 WL 3104869, at *2-5 (July 25, 2012).) These conclusions are supported by substantial evidence.

As discussed above, "a claimant bears the burden of demonstrating that she suffers from a medically determinable impairment." *Kestel*, 756 F. App'x at 597. Plaintiff cites to several records in support of her assertion that "the record consistently documents the diagnoses of [Plaintiff's] fibromyalgia and chronic back pain." (SE, Doc. No. 8 at PageID 812 (citing AR, Doc. No. 7-2 at PageID 63, 65-67, 70; Doc. No. 7-9 at PageID 424-25,

429, 440, 442, 554; Doc. No. 7-10 at PageID 590, 600, 630, 676; Doc. No. 7-11 at

PageID 785.) Specifically, Plaintiff first cites to her own testimony at the October 2022

hearing. (SE, Doc. No. 8 at PageID 812 (citing AR, Doc. No. 7-2 at PageID 63, 65-67,

70).) Next, Plaintiff cites to several rheumatology progress notes that documented

Plaintiff's complaints of pain, swelling, and stiffness in several areas, and the nurse

practitioner's diagnosis of fibromyalgia. (*Id.* (citing AR, Doc. No. 7-9 at PageID 424-25,

429, 440, 442, 590, 600, 630, 676; Doc. No. 7-10 at PageID 785).)

   None of the cited records support Plaintiff's argument that fibromyalgia and back

pain are medically determinable impairments. As noted above, the ALJ cannot rely on a

claimant's statement of symptoms or a diagnosis to establish a medically determinable

impairment of fibromyalgia. 20 C.F.R. § 416.921; SSR 16-3p, 2017 WL 5180304, at *3-

4; SSR 12-2p, 2012 WL 3104869, at *2-3. And even in the physical examination sections

of these progress notes, Plaintiff's provider did not document tender points or other

evidence of fibromyalgia as required by SSR 12-2p. (*Id.* at PageID 426-27, 441, 593,

603, 633, 679; Doc. No. 7-10 at PageID 788; *see also* 2012 WL 3104869, at *3.) Plaintiff

therefore has not cited any evidence that satisfies the criteria of Sections II.A or II.B of

SSR 12-2p to establish fibromyalgia as a medically determinable impairment. Nor has

she shown that the third criteria of sections II.A or II.B. of SSR 12-2p (*i.e.*, evidence

other disorders that could cause the symptoms or signs were excluded) is met.

   Plaintiff relied on the same rheumatology progress notes referenced above to

argue that chronic back pain is a medically determinable impairment. (SE, Doc. No. 8 at

PageID 812 (citing AR, Doc. No. 7-9 at PageID 424-25, 429, 440, 442, 590, 600, 630,

676; Doc. No. 7-10 at PageID 785).) But as noted, Plaintiff cannot rely on diagnoses and her own complaints of symptoms to establish a medically determinable impairment. Plaintiff also cites to a September 2018 primary care progress note that documented positive straight leg raising and spinal tenderness at several lumbar levels. (SE, Doc. No. 8 at PageID 812 (citing AR, Doc. No. 7-9 at PageID 554).) However, because this note is dated approximately two years before the SSI application date, these findings are not relevant to the time period at issue in this case. Because Plaintiff failed to identify evidence that she meets the criteria of SSR 12-2p or has a medically determinable back impairment, the ALJ did not err when he determined that Plaintiff does not have a medically determinable impairment of chronic back pain.

The Court notes that substantial evidence in the record supports the ALJ's conclusion. The physical examinations documented in the rheumatology records do not identify any tender points. (AR, Doc. No. 7-9 at PageID 426-27, 441, 593, 603, 633, 679; Doc. No. 7-10 at PageID 788; *see also* 2012 WL 3104869, at *3.) These notes, as well as the other rheumatology progress notes, document fullness to the metacarpophalangeal joints on just two occasions. (AR, Doc. No. 7-9 at PageID 426; AR, Doc. No. 7-10 at PageID 691.) Plaintiff's provider noted "findings of osteoarthritis"—without specifying the location of the findings—on just a few other occasions. (AR, Doc. No. 7-9 at PageID 593, 603; Doc. No. 7-10 at PageID 691, 788.) These notes do not show any back abnormalities. (*Id.*) And during the visits when Plaintiff's provider noted unspecified "findings of osteoarthritis," Plaintiff complained of only hand, knee, and left shoulder pain—not back pain. (*Id.*) Other rheumatology and primary care records documented no

significant musculoskeletal or neurological abnormalities. (AR, Doc. No. 7-9 at PageID 441, 489, 500, 561, 566, 568; Doc. No. 7-10 at PageID 633, 677, 679, 688.)

Plaintiff cites to a case from the Northern District of Ohio to argue that consistent diagnoses of fibromyalgia and chronic back pain are "enough to establish the presence of a medically determinable impairment." (SE, Doc. No. 8 at PageID 812 (citing *Hobson v. Comm'r of Soc. Sec.*, No. 3:14-cv-2576, 2016 WL 1436143, at *1 (N.D. Ohio Apr. 12, 2016)).) This case is not persuasive. The *Hobson* court cited SSR 96-7p, which has been superseded by SSR 16-3p. 2016 WL 1436143, at *1 (citing SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (S.S.A. July 2, 1996), *superseded by* SSR 16-3p, 2017 WL 5180304, at *1 (revised and republished Oct. 25, 2017)). Additionally, in *Hobson*, the ALJ's determination of the plaintiff's mental impairments—not fibromyalgia—was at issue, and so the ALJ did not consider the evidentiary requirements of SSR 12-2p. Hobson, 2016 WL 1436143, at *1.

In sum, Plaintiff failed to identify evidence that she meets all of the criteria to establish fibromyalgia as a medically determinable impairment pursuant to SSR 12-2p, or that chronic back pain is a medically determinable impairment. *See* 20 C.F.R. § 416.921; SSR 16-3p, 2017 WL 5180304, at *3. Additionally, substantial evidence supports the ALJ's conclusions. The Court therefore finds that the ALJ did not err in determining that Plaintiff did not have a medically determinable impairment of fibromyalgia or chronic back pain.

## V.      CONCLUSION

In sum, the Court finds that the ALJ complied with the applicable legal framework and his conclusions are supported by substantial evidence. The ALJ's decision must therefore be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1.      Plaintiff's Statement of Errors (Doc. No. 8) is OVERRULED;

2.      The Court AFFIRMS the Commissioner's non-disability determination; and

3.      The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge